IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| William R. Blanton, | ) | C/A No. 2:13-2804-CWH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| City of Charleston; and Troy Williams, *in his individual capacity*, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

    The plaintiff, William R. Blanton ("Blanton"), filed this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; against Defendant City of Charleston ("the City"), as well as alleging defamation/slander *per se* against Defendant Troy Williams, in his individual capacity. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Defendant Williams's motion to dismiss. (ECF No. 11.) Blanton filed a response in opposition (ECF No. 25), and Williams replied (ECF No. 30.) Having reviewed the parties' submissions and the applicable law, the court finds that Williams's motion to dismiss should be denied.

## BACKGROUND

    This action arises out of Blanton's former employment with the City of Charleston Fire Department. The instant motion is directed only toward Blanton's sole claim against Defendant Troy Williams, who was a co-worker of Blanton at the fire department. Blanton asserts a state law claim of defamation against Williams based on certain statements Williams made to the local Charleston newspaper in an interview for a story published in December of 2011 regarding a fire on Daniel

Island that occurred the previous March. The interview related to an internal report of the fire department that contained criticism of both Blanton and Williams regarding the Daniel Island fire. Blanton and Williams were both fire captains at the time of the Daniel Island fire, but, following the fire, Blanton was required to attend remedial training conducted by Williams. At the time, Blanton and Williams were competing for a vacant Battalion Chief position and Williams was Acting Battalion Chief.[1] Blanton was ultimately demoted from his position as captain and, following a medical leave of absence, left the department.

During the course of the *Post and Courier* interview Williams essentially blamed Blanton for mistakes committed at the Daniel Island fire. In the interview, Williams stated that Blanton "made a tremendous amount of mistakes" and that Williams, who arrived at the scene of the fire shortly after Blanton, "had a lot to overcome by the time [he] arrived at the scene." (Def.'s Mem. Supp. Summ. J., Ex. 1 at 5, ECF No. 11-2 at 6.) Williams also stated that he did not want the assignment to re-train Blanton but did so at the fire chief's request and that "[d]espite involving others and trying numerous approaches . . . Blanton just couldn't get up to speed with the new way of doing things." (Id.) Finally, Williams stated, "I did everything I could to get him retrained and save his job . . . But if you don't have it after 30 years, I can't save you." (Id.)

## DISCUSSION

**A.     Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual

---

[1] Blanton had apparently served as Acting Battalion Chief in the past as well.



allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into a motion for summary judgment. E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Further, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.' " Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

**B.     Defense of Protected Opinion**

Williams argues that Blanton's defamation claim must be dismissed because his statements are constitutionally protected opinion. The court disagrees.

State law defamation claims seek to compensate individuals for the harm inflicted upon them by defamatory falsehood. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 341 (1974). Sometimes at odds with this common law interest is the First Amendment's protection of the freedom of expression and freedom of the press. Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990); see generally Chapin v. Greve, 787 F. Supp. 557, 561 (E.D. Va. 1992) (discussing the balancing of these

competing interests). In attempting to balance a state's interest in protecting the good names of its citizens from defamatory statements with the First Amendment's free marketplace of ideas, the United States Supreme Court has established certain protections dictated by the First Amendment that limit the recourse of defamation plaintiffs in certain circumstances.[2]

In carving out these protections, the Court has stated:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.[] But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues.

Gertz, 418 U.S. at 339-40 (quoting N.Y. Times, 376 U.S. at 270). As the Supreme Court itself later observed, however, "this passage 'has become the opening salvo in all arguments for protection from defamation actions on the ground of opinion, even though the case did not remotely concern the question.'" Milkovich, 497 U.S. at 18 (quoting Cianci v. New Times Publ'g Co., 639 F.2d 54, 61 (2d Cir. 1980) (Friendly, J.)). The Supreme Court in Milkovich expressly stated that it has not created a wholesale defamation exemption for anything that might be labeled "opinion." Milkovich,

---

[2] For example, in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Court held that public officials must show actual malice to recover damages for defamatory falsehood relating to their official conduct. In Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967), the Court extended that rule to public figures. In Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 777 (1986), the Court held that the common law presumption that defamatory speech is false does not apply to a media defendant for speech of public concern; in such cases, the plaintiff must prove the statement's falsity.



497 U.S. at 18. The Court recognized that simply couching a statement in terms of opinion does not insulate a statement from being actionable if it nonetheless implies a false assertion of fact. Id.[3]

The Milkovich Court then recapitulated certain constitutional rules regarding defamation:

- Statements on matters of public concern must be provable as false before there can be liability under state defamation law, at least where a media defendant is involved. The Court expressly reserved judgment on cases, such as the one at bar, involving a nonmedia defendant. See Milkovich, 497 U.S. at 19-20 (citing Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 779 & n.4 (1986)).

- "[T]he Bresler-Letter Carriers-Falwell line of cases[4] provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." Milkovich, 497 U.S. at 20 (citing Falwell 485 U.S. at 50) (alteration in original).

- Under the New York Times-Butts-Gertz[5] culpability requirements, "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth. Similarly, where such a statement involves a private

---

[3] The Court provided the following examples. The majority opinion points out that simply couching the statement "Jones is a liar" in terms of opinion—"In my opinion Jones is a liar"—does not dispel the factual implications contained in the statement. Milkovich, 497 U.S. at 18-19. "As Judge Friendly aptly stated: '[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words "I think." ' " Id. at 19 (quoting Cianci, 639 F.2d at 64). By contrast, the dissent points out that a statement such as "I think Jones lied about his age just now," taken in context with other remarks showing that the speaker does not know Jones, does not actually know how old he is, and is basing his inference wholly on Jones's appearance, could not be actionable because it is clear that the speaker does not actually know whether Jones lied or have any other reason for thinking that he did. Milkovich, 497 U.S. at 26-27 (Brennan, J., dissenting).

[4] Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler, 398 U.S. 6 (1970); Old Dominion Branch No. 496, Nat'l. Ass'n of Letter Carriers v. Austin, 418 U.S. 264 (1974); Hustler Magazine, Inc. v. Falwell 485 U.S. 46, 50 (1988).

[5] New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967); Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974).



>figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault as required by Gertz." Milkovich, 497 U.S. at 20-21.

Accordingly, contrary to the issue framed by Williams in his motion, the pertinent inquiry is not whether the statement at issue is protected opinion. Rather, the dispositive question presented here is whether a reasonable fact finder could conclude that the statements made by Williams imply an assertion of fact about Blanton. Cf. Milkovich, 497 U.S. at 21 (framing the issue for resolution in that case). The court concludes that a reasonable jury could so find. The statements made by Williams, who as the person tasked with re-training Blanton was in a position to have knowledge about Blanton's progress, could reasonably be interpreted as stating actual facts about Blanton's training and competence.[6] The statements go beyond a general expression of Williams's opinion as to the quality of Blanton's work; they suggest, for instance, knowledge that Blanton was using outdated techniques and making more than an expected number of mistakes for someone of his training and experience.

Moreover, the statements are capable of being factually verified. Either Blanton was making progress in his training or he was not. Either he made a tremendous amount of mistakes in combating the Daniel Island fire or he did not. These are a far cry from the statements that were protected in Bresler, Letter Carriers, and Falwell as not capable of being reasonably interpreted as stating actual facts about an individual. Cf. Bresler, 398 U.S. at 13-14 (finding a statement

---

[6] This fact distinguishes the instant case from Gibson v. Boy Scouts of America, 163 F. App'x 206 (4th Cir. 2006), upon which the defendant heavily relies. In Gibson, the United States Court of Appeals for the Fourth Circuit concluded that a statement by the Boy Scouts' lawyer that the plaintiff was not being candid with his own attorney could not be reasonably interpreted as stating a fact, since the opposing lawyer had no basis of knowledge as to what the plaintiff told his attorney. Gibson, 163 F. App'x at 213.



characterizing a local real estate developer's bargaining position as "blackmail" in reporting on a real estate transaction of public interest could not reasonably be interpreted as actually accusing the plaintiff of the crime of blackmail); Letter Carriers, 418 U.S. at 283-87 (finding that a trade union's use of the word "traitor" in connection with the definition of the derogatory epithet "scab" to describe the plaintiff could not reasonably be interpreted as stating facts); Falwell 485 U.S. at 56 (finding that a magazine's parody of a public figure portraying the plaintiff as having an incestuous liaison with his mother in an outhouse could not reasonably be interpreted as stating facts). Rather, they are more akin to those found by controlling authorities not to be protected under the First Amendment. See Milkovich, 497 U.S. at 21-22 (finding that a statement that the plaintiff did not tell the truth at a public hearing could reasonably be interpreted to accuse him of the crime of perjury and was sufficiently susceptible of being proved true or false); Goodwin v. Kennedy, 552 S.E.2d 319, 323-24 (S.C. Ct. App. 2001) (finding that the defendant's statement that the plaintiff, an assistant school principal responsible for student discipline, was a "house nigger" was actionable because it could reasonably be interpreted in context as imputing unfitness in his profession since it assailed the plaintiff's integrity, decision making ability, and fairness).[7] Accordingly, the court finds that Williams's motion should be denied on the ground that his statements were constitutionally protected opinions.

---

[7] Notably, the Goodwin Court upheld the trial court's refusal to charge the jury on the defense that the statement was constitutionally protected opinion because the defendant's requested charge suggested, contrary to Milkovich, that all opinion was exempt as non-defamatory without qualification. See Goodwin, 552 S.E.2d at 324-25.



C.     **Defense Regarding "Actual Malice" Standard**

Next Williams argues that Blanton's defamation claim should be dismissed because the Complaint fails to allege facts showing that Williams acted with "actual malice" as required by the United States Supreme Court's decisions addressing alleged defamatory statements made regarding public officials and public figures. Because the court concludes that Williams has failed to show as a matter of law that Blanton was a public official or public figure triggering the "actual malice" culpability standard, the court finds that Blanton's defamation claim should not be dismissed on that basis.

As referenced above, controlling United States Supreme Court precedent applying the First Amendment teaches that a plaintiff who is a public official or a public figure must prove that the defendant acted with actual malice, requiring proof that the statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times, 376 U.S. at 279-80; see also Erikson v. Jones St. Publishers, 629 S.E.2d 653, 666 (S.C. 2006). "Thus, an important initial step in analyzing any defamation case is determining whether a particular plaintiff is a public official, public figure, or private figure." Erikson, 629 S.E.2d at 666. This determination is a matter of law to be made by the court on a case-by-case basis after a careful examination of all the facts and circumstances. Id. The record currently before the court on the instant Rule 12(b)(6) motion is not sufficiently developed for the court to make that important determination at this time. See, e.g., Erikson, 629 S.E.2d at 666 (discussing some of the factors courts have considered in determining whether a plaintiff is a public official or public figure). Accordingly, the court recommends that William's motion be denied on this ground without prejudice to raise the issue on a more fully developed record.



## RECOMMENDATION

For all of the foregoing reasons, the court recommends that the defendant's motion to dismiss (ECF No. 11) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 14, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).